IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KATHLEEN GULBRANSEN,<br><br>     Plaintiff,<br><br><br><br><br>            vs.<br><br><br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br><br><br><br>Case No. 2:12-CV-107 TS |

This matter comes before the Court on Plaintiff Kathleen Gulbransen's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits.  Having considered the arguments set forth by the parties, reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will reverse the decision of the ALJ and remand this case for further proceedings.

# I.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

---

[1]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2]*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3]*Id*.

[4]*Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## II.  BACKGROUND

A.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in November 2007.[7]
Plaintiff's claim was initially denied on February 20, 2008,[8] and upon reconsideration on May
15, 2008.[9]  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which
was held on May 5, 2009.[10]  The ALJ issued a decision on July 10, 2009, finding Plaintiff was
not disabled.[11]  The Appeals Council remanded the case to the ALJ with specific instructions on
July 29, 2010.[12]  The ALJ conducted a second hearing on November 1, 2010,[13] and again found
Plaintiff not disabled in a decision dated March 11, 2011.[14]  The Appeals Council denied
Plaintiff's request for review on August 9, 2011,[15] making the ALJ's decision the
Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).
Plaintiff filed this action on January 23, 2012.

---

[7]R. at 246-55.

[8]*Id*. at 106, 132-34.

[9]*Id*. at 108, 140-42.

[10]*Id*. at 74-105.

[11]*Id*. at 112-27.

[12]*Id*. at 129-31.

[13]*Id*. at 41-73.

[14]*Id*. at 16-35.

[15]*Id*. at 7-9.

B.      MEDICAL HISTORY

Plaintiff has dealt with mental health issues since she was in her twenties.[16]  In 2002, Plaintiff suffered a "nervous breakdown."[17]  Plaintiff began seeing Valerie Talbot, APRN, in 2001 and continued to see her until Ms. Talbot unexpectedly passed away in March 2006.  In April 2002, Ms. Talbot opined that Plaintiff could not work for 6 to 8 weeks, due to severe depression.[18]  Later in May 2002, Ms. Talbot opined that Plaintiff still could not work due to her depression.[19]  On June 15, 2002, Ms. Talbot again stated that Plaintiff could not return to work due to severe depression, anxiety, and fatigue.[20]  Ms. Talbot made similar statements in early July 2002.[21]  In November 2003, Ms. Talbot stated that Plaintiff was not able to work consistently because of poor concentration and focus.[22]  On August 4, 2005, Ms. Talbot opined that Plaintiff was not "medically/psychiatrically stable enough" to participate in jury duty.[23]  In addition to the

---

[16]*Id*. at 531.

[17]*Id*. at 497.

[18]*Id*. at 687-88, 697.

[19]*Id*. at 689.

[20]*Id*. at 692.

[21]*Id*. at 694.

[22]*Id*. at 659.

[23]*Id*. at 639.

above statements, Ms. Talbot's treatment notes indicate that Plaintiff suffered from depression,

anxiety, and post traumatic stress disorder ("PTSD") during the treatment period.[24]

Plaintiff began to see Gail Nelson, APRN, in 2006.  Ms. Nelson's treatment notes

indicate that Plaintiff continued to suffer from symptoms of depression, anxiety, and PTSD.

However, in September 2006, Ms. Nelson noted that Plaintiff began selling Avon.[25]  By October

of that year, Plaintiff was using her computer more to help her with her Avon sales and was

looking into online dating.[26]  By early 2007, Plaintiff was socializing with friends, was meeting

with the Red Hat Society, and was continuing in her Avon business.[27]  Despite these activities,

Plaintiff continued to report being overwhelmed and easily agitated.

In April 2009, Ms. Nelson wrote a letter to Plaintiff's legal representative.  Ms. Nelson

opined that Plaintiff's "ability to work productively for 8 hours a day, 5 days a week, without

excessive absences is highly questionable."[28]  However, Ms. Nelson conceded that she could not

make a definitive determination without more information, such as psychological testing, which

she admittedly had not done.[29]

-----

[24]*Id.* at 525-26.

[25]*Id.* at 490.

[26]*Id.* at 493.

[27]*Id.* at 499.

[28]*Id.* at 620.

[29]*Id.* at 499, 501, 503, 505, 506.

In February 2008, Dr. Elizabeth Allen conducted a consultative examination of Plaintiff.[30] Dr. Allen stated that Plaintiff's abilities to concentrate, attend, and do simple math were in the average range; her remote memory was average; and her ability to understand and respond to everyday and ethical situations was in the average range.[31]  Dr. Allen stated that "her immediate memory, concentration and attention skills are relatively lower than her general cognitive and memory skills" but that "her immediate memory skills are commensurate to, and her delayed memory skills are significantly higher than, her general cognitive skills."[32]  Dr. Allen stated that "[p]eople who score in this range are typically cognitively capable of understanding, remembering and carrying out most job instructions."[33]  Dr. Allen diagnosed PTSD, generalized anxiety disorder, panic disorder with agoraphobia, and major depressive disorder.[34]  Dr. Allen assessed a GAF score of 50-55, indicating moderate to serious impairment.[35]

In May 2008, Dawson Hedges, a state agency physician, completed a Psychiatric Review Technique with regard to Plaintiff.[36]  Dr. Hedges opined that Plaintiff had moderate limitations in

---

[30]*Id.* at 528-42.

[31]*Id.* at 532-33.

[32]*Id.* at 533.

[33]*Id.*

[34]*Id.* at 534.

[35]*Id.*

[36]*Id.* at 589-602.

the following areas: restrictions of activities of daily living; difficulties in maintaining social

functioning; and difficulties in maintaining concentration, persistence, or pace.[37]

Dr. Hedges also completed a Mental Residual Functional Capacity Assessment,[38] wherein

he stated that Plaintiff was moderately limited in the following areas: the ability to maintain

attention and concentration for extended periods; the ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to

work in coordination with or proximity to others without being distracted by them; the ability to

complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods; the ability to interact appropriately with the general public; the ability to accept

instructions and respond appropriately to criticism from supervisors; the ability to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to

maintain socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness; the ability to travel in unfamiliar places or use public transportation; and the ability

to set realistic goals or make plans independently of others.[39]   After reviewing the evidence, Dr.

Hedges concluded that Plaintiff was "unlikely to be able to do her previous work as a police

---

[37]*Id*. at 599.

[38]*Id*. at 603-06.

[39]*Id*. at 603-04.

dispatcher" but she was "mentally capable of at least simple, low-stress work commensurate with her physical RFC."[40]

C.      HEARING TESTIMONY - 2009 HEARING

The ALJ held the first hearing in this matter on May 5, 2009.[41]  At the hearing, Plaintiff testified that she previously worked as a police dispatcher and had done so from 1976 to 2002, when she went on long-term disability.[42]  Plaintiff stated that she felt overwhelmed, but was not absent prior to 2002 and received excellent performance evaluations.[43]

Plaintiff further testified that since she left her job her symptoms had become worse.[44] She had to rely on others for her shopping, cooking, and transportation needs, and that she spent most of her time sleeping or watching television.[45]

Plaintiff stated that her symptoms fluctuated over the years.[46]  She stated that in 2009, she could drive for approximately 10 to 15 minutes, but after that would become overwhelmed and would not be able to stay focused.[47]  Plaintiff further stated that she relied on her daughter to help

---

[40]*Id*. at 606.

[41]*Id*. at 74-105.

[42]*Id*. at 82.

[43]*Id*. at 84.

[44]*Id*. at 85.

[45]*Id*. at 86.

[46]*Id*. at 88.

[47]*Id*.

with various activities, such as laundry and grocery shopping.[48]  When asked if she thought she could perform work as a telemarketer, Plaintiff stated that she could not because she "would be too stressed by the whole thing."[49]

Plaintiff testified that she had about a week's worth of "good days" every month, but she always felt the symptoms of her conditions.[50]  Plaintiff further stated that she often did not bathe or otherwise groom herself, and that this was part of her PTSD.[51]

Plaintiff stated that she spent much of her time watching television, but could not concentrate on what was on.[52]  Plaintiff stated that it was difficult to read certain material, especially technical material, and that she required assistance in filling out paperwork.[53]

A vocational expert testified at the hearing.  In response to hypothetical questions from the ALJ, the vocational expert identified jobs that Plaintiff could perform in the national economy.  Plaintiff's representative asked the vocational expert if there were jobs in the national

---

[48]*Id*. at 89.

[49]*Id*. at 91.

[50]*Id*. at 93.

[51]*Id*. at 93-95.

[52]*Id*. at 95.

[53]*Id*. at 96.  The record provided to the Court contains a duplicate page (page 21) of the May 5, 2009 hearing transcript.  The page appears at both page 96 and 97 of the record.

economy that a person with the limitations noted by Dr. Hedges, discussed above, could

perform.[54]  The vocational expert stated that there were not.[55]

D.     THE ALJ'S FIRST DECISION

The ALJ issued his first decision on July 10, 2009.[56]  The ALJ followed the five-step

sequential process.  At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity during her alleged onset date of April 1, 2002, through her date last insured of

March 31, 2008.[57]  At step two, the ALJ found Plaintiff had the following severe impairments:

obesity, depression, adult ADHD, anxiety, panic disorder, and PTSD.[58]  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled a listed impairment.[59]  The ALJ found that Plaintiff had the residual functional

capacity to perform sedentary, semi-skilled work except that such work could not require work at

more than a low stress level.[60]  At step four, the ALJ found that Plaintiff was unable to perform

her past relevant work.[61]  At step five, the ALJ found that there were jobs available in the

---

[54]*Id*. at 103-04.

[55]*Id*. at 104.

[56]*Id*. at 112-27.

[57]*Id*. at 114.

[58]*Id*.

[59]*Id*. at 115.

[60]*Id*.

[61]*Id*. at 125.

national economy that Plaintiff could perform.[62]  As a result, the ALJ found that Plaintiff was not disabled.[63]

E.      THE APPEALS COUNCIL'S REMAND ORDER

Plaintiff asked the Appeals Council to review the ALJ's decision.  The Appeals Council granted Plaintiff's request, vacated the decision, and remanded the case with instructions. Specifically, the Appeals Council stated that upon remand, the ALJ must: (1) obtain medical expert evidence in order to clarify Plaintiff's physical and mental impairments; (2) give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; (3) obtain supplemental evidence from a vocational expert in order to clarify the effect of all assessed limitations, both exertional and nonexertional, on the claimant's occupational base; and (4) use the correct Medical-Vocational Rule(s) if the ALJ reaches Step 5 of the Sequential Evaluation Process.

---

[62]*Id*. at 126-27.

[63]*Id*. at 127.

F.     HEARING TESTIMONY - 2010 HEARING AND INTERROGATORIES TO DR.
       ENRIGHT

The ALJ held a second hearing on November 1, 2010.[64]  Plaintiff testified that, since the

prior hearing, her condition had worsened.[65]  She stated that she had more fatigue, her ability to

concentrate was worse, and her memory had worsened.[66]

Plaintiff stated that she relied on her niece to help her.[67]  For example, Plaintiff's niece

helped her with grocery shopping and with housework.[68]  Plaintiff also stated that her daughter

helped around the house, but that she, Plaintiff, was able to feed her cats.[69]

Plaintiff further testified that her activities had been limited since the last hearing.[70]

Plaintiff was able to attend family functions, like dinners and birthday parties, but she did not

always do so.[71]  Plaintiff stated that she could not watch a movie at a movie theater because it

---

[64]*Id*. at 41-73.

[65]*Id*. at 44.

[66]*Id*. at 45.

[67]*Id*.

[68]*Id*.

[69]*Id*. at 47.

[70]*Id*. at 48-49.

[71]*Id*. at 49.

12

was "over stimulating" and made her sick.[72]  However, she was able to go to a quiet restaurant with her niece.[73]

Plaintiff stated that she suffered from nightmares, which resulted in poor sleep.[74]  As a result, she often slept during the day.  At times Plaintiff would put a blanket over her head and "just lay there."[75]

Plaintiff stated that sometimes it would be two weeks to a month between showers and she would wash her hair "when my head itches so bad I can't stand it anymore."[76]  Plaintiff stated that she had one to two "bad days" per week where she has difficulty getting out of bed and engaging in any activities.[77]  On a good day, Plaintiff tries to do some housework, such as doing a load of dishes.[78]  Plaintiff believed that her maximum ability to sustain an activity would be two hours.[79]

---

[72]*Id*. at 50.

[73]*Id*. at 50-51.

[74]*Id*. at 51.

[75]*Id*. at 52.

[76]*Id*. at 57.

[77]*Id*. at 57-58.

[78]*Id*. at 58.

[79]*Id*. at 59.

A vocational expert also testified at the second hearing.  In response to a question posed by Plaintiff's representative, the vocational expert ruled out work if Dr. Hedges' limitations were accepted.[80]

In response to the remand of the Appeal's Council, the ALJ submitted interrogatories to Michael Enright, Ph.D., a clinical psychologist.[81]  Dr. Enright found that none of Plaintiff's impairments—PTSD, generalized anxiety disorder, panic disorder with agoraphobia, major depressive disorder—were severe.[82]  Dr. Enright further opined that none of Plaintiff's mental impairments caused severe limitations, nor did they meet or equal any applicable listing.[83]  Dr. Enright stated that Plaintiff had only mild restrictions of activities of daily living, moderate difficulties maintaining social functioning, mild difficulties maintaining concentration persistence, or pace, and no episodes of decompensation.[84]  Dr. Enright further stated that there were no conflicts in the evidence which affected his opinion.[85]

---

[80]*Id*. at 71-73.

[81]*Id*. at 714-19.

[82]*Id*. at 715.

[83]*Id*. at 716.

[84]*Id*. at 717-18.

[85]*Id*. at 718.

G.      THE ALJ'S SECOND DECISION

The ALJ issued the second decision in this matter on March 11, 2011.[86]  The ALJ

followed the five-step sequential process.  At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful activity during her alleged onset date of April 1, 2002, through her

date last insured of March 31, 2008.[87]  At step two, the ALJ found Plaintiff had the following

severe impairments: major depression, PTSD and generalized anxiety disorder, panic disorder

with agoraphobia, attention deficit hyperactivity disorder, and obesity.[88]  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled a listed impairment.[89]  The ALJ found that Plaintiff had the residual functional

capacity to perform sedentary semi-skilled work, except that such work could not require

working at more than a low stress level.[90]  At step four, the ALJ found that Plaintiff was capable

---

[86]*Id*. at 16-35.

[87]*Id*. at 18.

[88]*Id*. at 18-19.

[89]*Id*. at 19.

[90]*Id*. at 20.  The ALJ defined low stress level as including: a low production level;
working with the general public on only a less than occasional basis, but phone contact is
possible; only minimum contact with supervisors and co-workers on the job, but still having the
ability to respond appropriately to supervision, co-workers and work situations; not having any
training or supervision work duties; and the ability to deal with only minimal changes in a
routine work setting.  *Id*.

of performing her past relevant work.[91]  Therefore, the ALJ found that Plaintiff was not

disabled.[92]

### III.  DISCUSSION

Plaintiff raises three arguments in her brief: (1) whether the ALJ erred in failing to follow

the instructions of the Appeals Council on remand; (2) whether the ALJ erred by failing to

properly evaluate the medical opinion evidence; and (3) whether this case should be reserved and

remanded with an order for immediate payment of benefits.  The Court will address each

argument in turn.

### A.      INSTRUCTIONS OF THE APPEALS COUNCIL

Plaintiff first argues that the ALJ failed to follow the instructions of the Appeals Council

on remand.  As an initial matter, it is unclear if the Court can consider this argument.  There is

some disagreement among courts on whether the failure to follow the directives of the Appeals

Council necessitates reversal.[93]  The Tenth Circuit has stated that where the Appeals Council has

found that an ALJ has complied with its remand order "it is appropriate to examine the

Commissioner's final decision under our usual standards, rather than focusing on conformance

---

[91]*Id*. at 34.

[92]*Id*. at 34-35.

[93]*See Huddleston v. Astrue*, 826 F. Supp. 2d 942, 954-55 (S.D.W.Va. 2011) (discussing cases).

16

with the particular terms of the remand order."[94]   Nevertheless, the Court will consider Plaintiff's arguments.

       *1.*     *Medical Expert Testimony*

Plaintiff first argues that the ALJ failed to comply with the directive of the Appeals Council to obtain additional medical expert evidence.  As discussed above, the Appeals Council directed the ALJ to obtain medical expert evidence in order to clarify Plaintiff's physical and mental impairments.  To this end, the ALJ submitted interrogatories to Dr. Enright for Plaintiff's mental impairments and Dr. Morrison for her physical impairments.[95]

Plaintiff's argument on this point is less about the actions of the ALJ than the responses to the interrogatories by Dr. Enright.  Plaintiff complains that Dr. Enright provided terse, one-word responses to the interrogatory questions, with almost no analysis and little citation to the record.  Plaintiff further disagrees with the conclusions reached by Dr. Enright.  These are valid arguments that will be discussed in more detail below.  However, the Court must reject Plaintiff's argument that the ALJ failed to comply with the Appeals Council's directives.  The ALJ was instructed to obtain additional medical expert evidence.  The ALJ did so by sending interrogatories to Dr. Enright.  While it may have been better, and even advisable, for the ALJ to seek additional information from Dr. Enright or another medical expert upon receiving Dr.

---

[94]*Miller v. Barnhart*, 175 F. App'x 952, 956 (10th Cir. 2006); *see also Metcalf v. Astrue*, 2011 WL 43079, at *11 (N.D. Okla. Jan. 4, 2011) (This Court's standard of review . . . is not whether the ALJ complied with a previous order of the Appeals Council, but rather whether substantial evidence supports the ALJ's decision.").

[95]R. at 714-29.  The evaluation of Plaintiff's physical impairments by Dr. Morrison are not at issue here and will not be discussed further.

Enright's anemic responses, the Court cannot find that the ALJ failed to comply with the Appeals Council's order.  Therefore, reversal on this ground is not warranted.

   2.    *Residual Functional Capacity Assessment*

Plaintiff next argues that the ALJ failed to follow the Appeals Council's directives in conducting his residual functional capacity assessment.  The Appeals Council ordered the ALJ to give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

The directive from the Appeals Council comports with Social Security Ruling 96-89, which states that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[96]  Because of the similarities between the Appeals Council's remand order and the requirements of SSR 96-8p, the Court finds it appropriate to consider whether the ALJ's residual functional capacity assessment is free from legal error and supported by substantial evidence, rather than considering whether the ALJ complied with the remand order.[97]

As stated, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary semi-skilled work, except that such work could not require working at more than a low

---

[96]Social Security Ruling 96–8p, 1996 WL 374187, at *7 (July 2, 1996).

[97]*See Miller*, 175 F. App'x at 956.

stress level.[98]  The ALJ defined low stress level as including: a low production level; working

with the general public on only a less than occasional basis, but phone contact is possible; only

minimum contact with supervisors and co-workers on the job, but still having the ability to

respond appropriately to supervision, co-workers and work situations; not having any training or

supervision work duties; and the ability to deal with only minimal changes in a routine work

setting.[99]

   "The RFC assessment must include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

evidence (e.g., daily activities, observations)."[100]  Further, the ALJ must "explain how any

material inconsistencies or ambiguities in the evidence in the case record were considered and

resolved."[101]  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate

that evidence to his conclusions.[102]  When an ALJ fails to make the detailed findings required, his

RFC conclusions are not supported by substantial evidence.[103]

   As an initial matter, it is unclear if the ALJ complied with the requirements of SSR 96-

8p.  The ALJ provided a residual functional capacity assessment, then proceeded to discuss the

---

[98]R. at 20.

[99]*Id.*

[100]Social Security Ruling 96–8p, 1996 WL 374187, at *7.

[101]*Id.*

[102]*Cruse v. U.S. Dept. of Health & Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995).

[103]*Southard v. Barnhart*, 72 F. App'x 781, 785 (10th Cir. 2003).

evidence related to function, including a discussion of the weight given to the various medical sources and to Plaintiff's testimony.  However, the ALJ does little to actually link the residual functional capacity assessment with the evidence in the record.  Despite this failure, the Court finds that reversal is necessary for a more important reason: the ALJ's residual functional capacity assessment is not supported by substantial evidence.

In order for the ALJ to reach the conclusion he did on Plaintiff's residual functional capacity, the ALJ had to reject the great majority of the evidence in the record and rely almost exclusively on the opinions of Dr. Enright.  As discussed above, Dr. Enright provided mostly one-word answers to the interrogatory questions, providing no analysis and not explaining the conflict between his opinions and the other evidence in the record.  The Court finds that this does not constitute substantial evidence.  The Commissioner argues that Plaintiff waived her right to challenge Dr. Enright's opinions, but the Court disagrees.  As a result, the Court will remand this matter so that the ALJ may complete a residual functional capacity assessment, in compliance with SSR 96-8p, that is supported by substantial evidence.

B.       EVALUATION OF MEDICAL OPINION EVIDENCE

Plaintiff next argues that the ALJ erred in his treatment of the medical opinion evidence. As this matter is being remanded, the Court only finds it necessary to address the ALJ's treatment of Dr. Hedges' opinions.

20

As discussed in detail above, Dr. Hedges opined that Plaintiff suffered from moderate limitations in a number of areas.[104]  The vocational experts testified that, if Dr. Hedges' opinions were accepted, no work would be available to Plaintiff.[105]

The ALJ gave Dr. Hedges' opinion little weight because "[h]e did not have the opportunity to consider all the medical evidence, including Dr. Enright's opinion."[106]  The failings of Dr. Enright's responses to the ALJ's interrogatories are discussed above and do not provide a firm basis to reject Dr. Hedges' opinions.  Further, the only additional medical evidence that Dr. Hedges did not have the opportunity to consider were progress notes from Gale Nelson, which indicate that Plaintiff continued to struggle with her various symptoms.[107]

The factors the ALJ is to consider in evaluating Dr. Hedges' opinion "are set out in [20 C.F.R.] § 416.927(d)(3)–(6), and include: (1) the supportability of the opinion; (2) the consistency of the opinion with the record as a whole; (3) whether the source is a specialist; and (4) any other factors that tend to support or contradict the opinion."[108]

As stated, the ALJ gave Dr. Hedges' opinions little weight because he did not have a chance to review all of the evidence, including Dr. Enright's opinions.  However, as discussed, the progress notes from Gale Nelson are supportive of Dr. Hedges' opinions and Dr. Enright's

---

[104]R. at 603-04.

[105]*Id*. at 71-73, 103-04.

[106]*Id*. at 33.

[107]*Id*. at 609-17.

[108]*Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011).  20 C.F.R. § 416.927 has subsequently been reorganized so the relevant provision are found in 20 C.F.R. § 416.927(c).

opinions are not sufficiently explained or supported by the record.  There may be reasons to give

Dr. Hedges' opinions little weight, but the ALJ has failed to adequately explain them under the

appropriate standards.  Therefore, remand is necessary for the ALJ to properly consider the

opinions of Dr. Hedges.

The Commissioner argues that, even if the ALJ erred in evaluating Dr. Hedges' opinions,

any error was harmless.[109]  The Court disagrees.  The proper consideration of Dr. Hedges'

opinions are critical.  As discussed, when both vocational experts were given hypothetical

questions incorporating Dr. Hedges' limitations, they both stated that such limitations would

Plaintiff from work.  Therefore, the ALJ's error in this regard was not harmless.

C.      PAYMENT OF BENEFITS

In her third argument, Plaintiff argues that the Court should award immediate benefits.

Plaintiff argues that the record has been fully developed and substantial evidence shows that she

is disabled and entitled to benefits.  The Commissioner argues that immediate payment is not

appropriate.

The Court is permitted to award benefits without a rehearing.[110]  In considering whether

to award benefits, the Court considers the length of time the matter has been pending and

whether remand for additional fact-finding would serve any useful purpose or would merely

---

[109]Docket No. 15, at 15-16.

[110]42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and
transcript of the record, a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the cause for a rehearing.").

delay the receipt of benefits.[111]   The Tenth Circuit has made clear that "[t]he Secretary is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion."[112]

In this case, the Court finds that immediate payment of benefits is not appropriate.  It is true that the ALJ has twice considered this case, and will be required to consider it for a third time.  However, the ALJ has yet to correctly review the medical opinion evidence and has not properly assessed Plaintiff's residual functional capacity.  Without a correct residual functional capacity assessment, the Court cannot conclude that the record evidence clearly shows that Plaintiff is entitled to benefits.  While it is true that, if Dr. Hedges' limitations are accepted, the vocational experts have testified that Plaintiff would be precluded from work, there may yet be legitimate reasons for the ALJ to give Dr. Hedges' opinions less weight.  Therefore, the Court finds that remand is appropriate for the ALJ to correctly review this evidence and reevaluate Plaintiff's residual functional capacity in light of this evidence.

IV.  CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

---

[111]*Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

[112]*Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

The Clerk of Court shall enter judgment remanding this case and shall close this case

forthwith.

DATED   October 4, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge